IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-3286

**MICHELLE PRINCIPE**, an individual,

    Plaintiff,

v.

**TROOPER WESLEY DAKAN**, in his individual capacity

    Defendant.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, by and through her counsel, BAUMGARTNER LAW, L.L.C., respectfully submits this Complaint against the Defendants and allege the following:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

2. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 USC §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

**PARTIES**

3. Plaintiff Michelle Principe is and was at all relevant times a citizen of the State of Colorado, residing in Jefferson County, Colorado.

4. Defendant Trooper Wesley Dakan is or was at all times relevant a citizen of the State of Colorado employed by the Colorado State Patrol.

**GENERAL ALLEGATIONS**

5. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

6. On November 13, 2018, a man named Josiah Shaw (hereinafter, "Josiah") called the police to report an incredibly minor car accident.

7. In his witness statement taken on June 6, 2019, Josiah stated that he was talking with his girlfriend Ashley Stratman (hereinafter, "Ashley") in her car when they felt a very subtle bump and saw a blue Chevy truck driving away. Specifically, Josiah stated the following: he saw the truck driving slowly and that he would not be surprised if the driver did not know they hit Ashley's car because it was so subtle but there was a small golf-ball sized dent in the plastic bumper – likely caused by a trailer hitch - that came out naturally the next day when the weather changed. Josiah never stated there was any paint transfer or noticeable scratching to the bumper. In fact, the damage appeared so minor to Josiah that he and Ashley were unsure if it was even worth calling the police for assistance.

8. Inevitably Josiah did call the police and Colorado State Trooper Wesley Dakan (hereinafter "Dakan") was dispatched to meet Josiah and Ashley.

9. Josiah was able to give Dakan the license plate number for the truck that might have hit his girlfriend's car.

  a. In his June 6, 2019, statement Josiah stated he told Dakan that he tried to flag the truck down when it was driving away.

  b. Dakan intentionally lied in his police report when he stated that Josiah chased the truck that allegedly hit his girlfriend's car on foot because Dakan wanted to exaggerate the seriousness of the situation in an attempt to cover up his future unlawful use of force against the Plaintiff Michelle Principe.

10. Dakan used the license plate to make contact with Michelle Principe (hereinafter "Michelle") and her boyfriend Kirk Gillett via phone. The truck was registered to Mr. Gillett but Michelle admitted to driving the truck earlier but denied backing into anybody's car. All parties agreed to meet so Dakan could see if there was any damage to Mr. Gillett's truck that would indicate a collision.

11. In his report Dakan lied about observing paint transfer onto the trailer hitch of Mr. Gillett's truck. Specifically, Dakan's lie is obvious because in his report he notes that Ashely's car is white but he saw black paint on Mr. Gillett's trailer hitch. Cars painted white do not and cannot transfer black paint to another vehicle after making contact. Ashely's car could only transfer white paint.

12. Nevertheless, Dakan decided to cite Michelle under C.R.S. 42-4-1211(1)(a) for backing out of a parking spot unsafely. Michelle was understandably upset and told Dakan multiple times that she could not see any damage or paint transfer to the trailer hitch of Mr. Gillett's truck. Michelle even took video after her encounter with Dakan showing that there was no paint transfer to the trailer hitch.

3

13. If Dakan had not been lying about the damage he witnessed it would have been no problem to show Michelle his observations. However, because there was no damage Dakan could not demonstrate the basis for writing a traffic citation and thus ease Michelle's frustrations.

14. Frustrated with Dakan, Michelle stated that "this is bullshit I didn't hit anyone." The following short conversation ensued:

    a. Daken stated "You need to wait until I'm done."

    b. Michelle stated "I don't have to wait for anything I'm already late for…[inaudible]."

15. Michelle then begins to walk away from Dakan. Earlier in their encounter Michelle uses a significant amount of profanity towards Dakan which enraged him because he, like most law enforcement officers, demand respect from the citizenry. The law enforcement community unfortunately does not understand that the citizenry is under no requirement to show any respect toward them or any government official.

16. Dakan, furious about being disrespected, rushes up to Michelle from behind and grabs her without warning. Michelle states "get away from me" over and over again and without giving any commands to stop or inform Michelle she is being detained or under arrest Dakan continues to grab her. Michelle keeps yelling "get away from me" and "you're hurting me" while Dakan slams her face down into the concrete ground.

17. Michelle, while being assaulted by Dakan begins to scream loudly. Sometime during the assault Dakan intentionally fractured Michelle's wrist.

18. Dakan is able to bring Michelle to his cruiser and according to his police report tells her she is only being detained, and not arrested, only after he had assaulted and fractured her wrist.

19. In other words – Dakan fractured Michelle's wrist and he was not even trying to invoke an arrest.

20. In an attempt to cover up his assault Dakan charges Michelle with obstructing governmental operation (C.R.S. 18-8-102) along with the C.R.S. 42-4-1211(1)(a) charge. Both charges were dismissed by the district attorney's office because they clearly lacked merit.

21. As a direct result of Dakan's assault, Michelle was forced to undergo intensive surgery that has required significant amounts of continuous physical therapy, perpetual pain, and scarring.





## CLAIMS FOR RELIEF

## CLAIMS UNDER FEDERAL LAW, 42 U.S.C. §1983

22. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

23. The Fourth Amendment of the U.S. Constitution prohibits unreasonable or excessive use of force in connection with searches and seizures. While detaining, restraining and/or arresting a person the Fourth Amendment protections only allow police officers and deputies to use the amount of force that is reasonably necessary under the circumstances.

## FIRST CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Excessive Force Resulting in Permanent Debilitating & Disfiguring Injury
### (By Plaintiff Michelle Principe against Wesley Dakan)

24. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

25. A "seizure" for purposes of the Fourth Amendment to the U.S. Constitution occurs when an officer intentionally restrains the freedom of a person to simply walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Without question, a seizure occurs when a state trooper fractures a citizen's while simply grabbing them. The amount of force used in Michelle's apprehension and arrest was unnecessary, excessive, and shocks the conscience because she never resisted the trooper which is evidenced by the fact she was never charged with resisting arrest or disobeying a lawful order.

26. Michelle was seized the moment Dakan grabbed her wrist.

27. Michelle's wrist was fractured by a trooper that admitted he was not actually going to place her under arrest. Dakan used a hard hand technique to grab and control Michelle which is

8

only supposed to be sued against citizens that are actively resisting arrest by throwing punches and the like. Michelle was not actively resisting arrest.

28. Prior to being seized Michelle did not pose a threat of physical harm to anybody, and no reasonable officer could perceive any such threat. Thus, any use of force was objectively unreasonable in light of the facts and the circumstances at the time.

29. Dakan knew that the force used against Michelle would injure her, because any trooper trained in the difference between soft and hard hand control techniques would know that invoking a hard hand control technique against an unsuspecting, non-resistant person, would cause injury.

30. Dakan knowingly, or at least recklessly disregarded Plaintiff's safety, by failing to take reasonable measures to minimize the risk of harm to Michelle.

31. Colorado state troopers are, or should be, trained in the use of force and know that they must (1) give a person the opportunity to peacefully surrender and (2) when there is no attempt to resist arrest forego the use of painful and coercive force.

32. Here, Dakan was either improperly trained in use of force techniques or chose to deliberately ignore his training when he fractured Michelle's wrist.

33. Dakan's use of force caused Michelle permanent impairment, permanent disfigurement, ongoing and tremendous pain and suffering, as well as severe psychological and emotional trauma and distress.

### SECOND CLAIM FOR RELIEF
**Violation of the Fourth Amendment of the United States Constitution**
**Wrongful Arrest**
**(By Plaintiff Against Defendant Dakan)**

34. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

9

35. An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot…[f]or an officer to have reasonable suspicion to seize an individual the officer must have a particularized and objective basis for suspecting the particular person stopped is involved in criminal activity. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.2000).

36. A warrantless arrest is permissible only when an officer has probable cause to believe that a person committed a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995).

37. Michelle was seized the moment Dakan grabbed her arm.

38. At no point during this encounter with Michelle did Dakan have any probable cause for an arrest because he even tells her, while in handcuffs and in the back seat of the police cruiser that she is only being detained.

39. Nevertheless, by grabbing Michelle and fracturing her arm before placing her in handcuffs and then putting her in the back seat of a police cruiser she was in fact under arrest.

40. The purpose of charging Michelle with two law violations was to exact revenge because she had previously cursed at Dakan and belittled his authority. There was never a good faith factual basis to place Michelle under arrest.

41. Had there been any actual facts to support the two charges levied against Michelle her case would not have been dismissed by prosecutors.

42. The wrongful arrest by Defendant Dakan was the proximate cause of injuries and damages suffered by Michelle including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other economic losses past and future, embarrassment and public humiliation, and loss of reputation.

### THIRD CLAIM FOR RELIEF
### Violation of the Fourth Amendment of the United States Constitution
### Malicious Prosecution
### (By Plaintiff Against Defendant Garth)

43. Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

44. At no time during his interaction with Michelle did Dakan have probable cause to issue a summons or invoke an arrest.

45. The arrest and charging Michelle with crimes not supported with a good faith or actual basis in fact was done intentionally and out of spite and malice. The fracturing of Michelle's wrist and subsequent prosecution was a result of Dakan's anger and spite toward her for cursing at him and belittling his authority.

46. In order for Dakan to cover up his illegal behavior Michelle was intentionally charged with false crimes that were voluntarily dismissed by the District Attorney's office because they lacked a factual basis.

47. The prosecution of Michelle was invoked by Dakan for a clearly improper purpose: cursing at him and belittling his authority.

48. The malicious prosecution by Dakan was the proximate cause of injuries and damages suffered by Michelle including, but not limited to deprivation of constitutional rights, past and future physical pain and suffering, lost wages and other economic losses past and future, embarrassment and public humiliation, and loss of reputation.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor on each of her respective claims and against Defendants as follows:

(a) Compensatory damages in an amount that will fully and fairly compensate the Plaintiff for her injuries, damages, and losses pursuant to 42 U.S.C. §1983;

(b) Punitive damages pursuant to federal law as punishment and deterrence against the commission of future such conduct;

(c) Pre and post-judgment interest;

(d) Injunctive relief sufficient to prevent further constitutional violations by Defendants;

(e) Reasonable attorney's fees, expert witness fees, and the cost of this action pursuant to 42 U.S.C. §1988 and any other applicable federal or state law.

(f) Any other relief the Court deems proper and just.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 3rd day of November, 2020.

        Respectfully submitted,
        BAUMGARTNER LAW, L.L.C.

        *s/ S. Birk Baumgartner*
        S. Birk Baumgartner
        300 E. Hampden Ave., Ste. 401
        Englewood, CO 80113
        Phone: (720) 626-9418
        Fax: (720) 634-1018
        birk@baumgartnerlaw.com

Plaintiff's Address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113